Good morning, Your Honors. My name is William Broberg, and I represent the defendant appellate Richard Marks in case number 053021H. At counsel table is Mark Minster, who represents defendant appellant Lyndon Bridges in case number 0530478. We have spoken, we've divided our time, and I assume I'll stick to the clock. On behalf of, first, on behalf of Mr. Marks, I'd like to thank you very much for hearing me on his behalf this morning. Mr. Marks was convicted after a 37 or 38 day jury trial, I count 38, the government counts 37, of conspiracy to defraud the United States, conspiracy to commit wire and mail fraud, 24 counts of aiding and assisting the filing of material false income tax returns, mail fraud, 9 counts of mail fraud. Mr. Broberg, if I can just interrupt you, I think we're pretty familiar with the trial, with all of your arguments, and with pretty much what happened. Speaking just for me, obviously, I think the issue that you raised that is more serious than any other has to do with restitution. And if I understand your position correctly, among other things, you complain that you did not have an opportunity in connection with the actual amended judgment that was entered to object and to allocute with respect to the order of restitution. That's a correct statement of our issue, Your Honor. That's correct, right? Yes. Okay. Then here's my question. I have in my hand a document which is called Judicial Notice 22, and it refers to the amended judgment, which is what ultimately was entered. So you – and this was – this was – this document was filed on October 14th, which six days before the amended judgment was entered. And it goes through in fair detail the objections that – that Marks had to the amended order of restitution. So the heart of my question is, this being so, even if there should technically have been a sentencing proceeding at which he was present, why isn't it a case of no harm, no foul? Well, on this record, Your Honor, the problem is, is that amended judgment that was entered on October 20th. Yes. And I would like to point out, there's no record when that was sent to him. There's no record. It doesn't make any difference about – now, look, there's no question at all that you got it, because you say – I'm not asserting you didn't get it. Okay. So the fact that there's no record that it was sent is wholly immaterial. The fact is you got it and you filed a document which is quite specific. I'm not saying that the objections have merit. We can get to that if we – if need be. But you specifically filed a document that lists four objections to the U.S. Attorney's ability to do it, to the Internal Revenue Service as an agency that really exists, to the entity of the United States, and to – and whatever. And you could have made specific challenges to the dollar amounts or anything else, none of which appears. Well, if that goes to my point, what did Mr. Marks get in the mail? Did he just get that amended judgment with dollar amounts? It doesn't say how those round numbers are arrived at. That's why you didn't make that objection. My point is simply this at the moment. Okay. You had an opportunity to and you did, in fact, assert the objections that you wish to have served. And they were quite consistent with the trial theory. So it's not particularly surprising that those objections were made because they are quite consistent with your – the theory of defense. And I understand that. I happen to disagree that that has merit. But I understand your theory. And so having the opportunity to object is the key thing, and that's what I'm focusing on. Yes. Your Honor, in the Mong case, for instance, from the Eleventh Circuit, which I think is the closest on, you know, the various other cases cited in both our brief and the government's brief, facts are off a little bit this way or that way. For instance, you know, in this circuit's main case, which I believe is the Sina Cuegos case, it had to do with restitution and compliance with the statute pre-sentencing, not the 90-day period. There is language in that case from it. Well, I was on that panel, and what we basically said was that the 90-day period is to benefit the victims, not the defender. But that's – okay. Go ahead. But nothing – you know, and then there is a Sixth Circuit case that we both cited where nothing – something at least happened in the 90-day period. Here, like the Mong case, nothing happens. There's no indication anywhere that this is to benefit the victims, this delay. Well, no. But there's a specific list of the amount of restitution which is due to a whole bunch of folks, 145, I think, plus to the Internal Revenue Service. And so with that document in hand, you had the opportunity to object and did in detail. And so I'm just saying what more would you do? There's nothing that I can see that you would have done different had you shown up with Mr. Marks in court. Well, there's also compliance with the statute, Ms. Bestow, Your Honor. I mean, yes, I know, but you know what, that's what harmless error is all about. There's a goof. Somebody doesn't comply with the Constitution or doesn't comply with the statute and you ask was it prejudicial somehow. And so the heart of my question is how were you prejudiced by it since you, in fact, objected? Well, like you said in the beginning, Your Honor, if there was a sentencing proceeding in this matter, he could have addressed the court before order to pay $37 million. That's a lot of money. It's not $10,000. And is there any hint that you would have said anything other than what you said in the Judicial Notice 22 document? I don't think there is in this record. Okay. Thank you. Does Your Honor have any other questions on that issue? I think I monopolized the questions a lot, so I'm going to be quiet. But thank you for answering my question. We essentially raised seven issues that fit, I think, fairly neatly into three main subject avenues, areas. Excuse me. And the first one, we spoke about restitution, which I thought was the second one. And the first one is the conduct of the trial and issues related to it. Mr. Marks was treated differently. He was seated differently. He was treated differently. Well, he was seated with other defendants who were representing themselves. Is that correct? That's correct. Unlike the Turquette case, I believe it's called, where defendants, whether they had attorneys or not, were all seated in the front row on a first bench. It's a case from the First Circuit that I believe was cited by the government. All defendants are treated the same there. Here we're making a distinction within classes of defendants that litter. Excuse me. Well, what perception would that give the jury that was unfair to your client? There were lots of defendants, lots of lawyers. Everybody had to be seated. Fair enough. And in a vacuum, I absolutely would agree. And one thing that I think is important is we're not just saying, you know, he had to sit in the second row given the new trial. We're saying there's the seated in the second row. There's the continually being cut off, you know, during his presentations, as well as the judge affirmatively making statements that also highlights the distinction between the pro se defendants and those seated together. It's not, we're not raising five arguments about that. It's one unitary thing. If it was any one of those, that's not enough. But together, the appearance of partiality was, we believe, reasonably questioned. Well, I've listed the ones that you seem to object to. And clearly, the court didn't have to give Mark's jury instructions. Mark's opening statement had to be cut off at some point. They let him go on and on before he was cut off. And then I think it was accurate for the judge to say that opening statements are not evidence. And so that's the, and then the seating at the separate table. I just don't see any of those things as being unfair. Your Honor, but he wrote some very bizarre things. At some point, we have to question his competence. He's not going to do it for us. The usual course of the matter is some attorney gets close enough to a client where they can.
judges: B. Fletcher, Beam, Rymer